# In the United States Court of Federal Claims

No. 12-882C

(Filed: November 19, 2013)

| | |
|---|---|
| **KWV, INCORPORATED,** | ) Post-judgment request for attorney's |
| | ) fees and expenses under the Equal |
| **Plaintiff,** | ) Access to Justice Act, 28 U.S.C. |
| | ) § 2412(d); justification for the |
| v. | ) government's posture in the case |
| **UNITED STATES,** | ) |
| **Defendant.** | ) |

William M. Weisberg, Tysons Corner, VA, for plaintiff.

Alexis J. Echols, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Stuart F. Delery, Assistant Attorney General, Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel were Dennis Foley, Counselor to the Assistant General Counsel, and Aleia Barlow, General Attorney, Office of the General Counsel, United States Department of Veterans Affairs.

**OPINION AND ORDER**

LETTOW, Judge.

A judgment on the administrative record was issued in favor of plaintiff, KWV, Incorporated ("KWV") in this pre-award bid protest contesting an action by the Department of Veterans Affairs ("VA"), Office of Small and Disadvantaged Business Utilization ("OSDBU"), decertifying KWV as a qualified veteran-owned small business ("VOSB") and nullifying an apparently successful offer KWV had made for a contract for work on the Boston Health Care System Project.  *KWV, Inc. v. United States*, 111 Fed. Cl. 119, 123, 128 (2013).  OSDBU took this action in response to an agency protest made by another offeror for the contract.  *Id*. at 122. The court set aside OSDBU's decertification and restored KWV to the list of VOSBs qualified to be included in VA's VetBiz Vendor Information Pages ("VIP") database, rendering it eligible for awards under VA's Veterans First Contracting Program.  *Id*. at 128.  Based upon the court's judgment, KWV has moved for an award of attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  *See* Pl.'s Mot. for Attorney's Fees Pursuant to the Equal Access to Justice Act ("Pl.'s Mot."), ECF No. 61.  KWV seeks $135,157.00 in attorneys'

fees, arguing that it was a prevailing plaintiff, that it is eligible for an award under EAJA, and that the EAJA hourly rate cap should not apply in this case because the litigation was focused on a narrow area of specialized law. Pl.'s Mot. at 2. The government maintains that its position in the underlying litigation was substantially justified and therefore no award of attorneys' fees is warranted. *See* Def.'s Resp. to Pl.'s Mot. For Atty's Fees ("Def.'s Opp'n") at 5. The government also argues that if the court were to award fees, they should be reduced to the amount permitted under the EAJA hourly rate cap. *Id*. at 7.

## BACKGROUND

KWV is a Rhode Island close corporation owned by James Maron, a veteran who served in the United States Army, and his two sons and a granddaughter. *KWV*, 111 Fed. Cl. at 122. Mr. Maron owns 60 percent of the issued and outstanding shares, while the other owners share the remaining 40 percent. *Id.* Currently, KWV is Mr. Maron's sole business endeavor, and he has many years of experience in the construction industry. *Id.*; *see also* 38 C.F.R. § 74.4(b) (explicating factors relevant to control). Mr. Maron splits his time each year between Rhode Island and Florida, spending just under half of the year in Rhode Island and the rest of the year in Florida. *Id.* at 123. He is considered a legal resident of Florida. *Id.* Mr. Maron works for KWV proportionally four times more than do his sons. *Id.* at 127. In 2011, KWV applied for verification as a qualified VOSB and for inclusion in the VA's VIP database. *Id.* at 123.[1] The Center for Veteran Enterprise ("CVE") initially denied KWV's application but permitted KWV to cure and request reconsideration. *Id.* Upon review of KWV's revised documentation and with an additional investigation of the company, including a site visit to KWV's offices in Rhode Island and interviews with Mr. Maron and other employees, CVE approved KWV's application for designation as a VOSB and included it in the VIP database. *Id.*

After its application was accepted, KWV placed a bid on a posted solicitation for a task order for work on the Boston Health Care System Project, winning the task order on July 11, 2012. *KWV*, 111 Fed. Cl. at 123. Afterwards, a competitor filed a formal protest with VA, challenging KWV's status as a VOSB. *Id.* The protestor alleged that Mr. Maron, by virtue of the time he spent in Florida, was not actually in control of the company, but rather his two non-veteran sons were effectively in charge of KWV. *Id.* The protest was considered by OSDBU, which initiated an investigation into KWV. *Id.* KWV was notified of the protest and responded by submitting a letter of explanation and additional documents indicating Mr. Maron's involvement with KWV. *Id.* KWV noted Mr. Maron's presence in Rhode Island during the most active months of the construction season and asserted that when Mr. Maron was in Florida he continued to manage the day-to-day business of KWV via telephone, e-mail, and other communicative means, and that he traveled to Rhode Island as necessary to attend meetings and conferences. *Id.* OSDBU conducted its investigation as a paper exercise, omitting to interview Mr. Maron or any employees, to conduct a site visit, or to examine KWV's mode of performing its prior contracts. *Id.*

---

[1]VA initially employed a self-certification scheme for the VOSB program and later switched to a verification program. *See KWV*, 111 Fed. Cl. at 123. KWV had self-certified as a VOSB under the previous program, winning and performing projects for VA without incident. *Id.* at 123.

On October 23, 2012, OSDBU determined that Mr. Maron was not in sufficient control of the day-to-day management of KWV and disqualified KWV from participation as a VOSB. *KWV*, 111 Fed. Cl. at 123-24.  As a result, KWV's contractual award was terminated and all of its pending proposals for VOSB projects were disqualified.  *Id.* at 124.  KWV filed its pre-award bid protest in this court on December 14, 2012, alleging that OSDBU's determination was arbitrary and contrary to law and seeking reinstatement as a VOSB.  *Id.*  The court granted KWV a temporary restraining order and later a preliminary injunction, extending KWV's period of eligibility.  *Id.*  The parties cross-moved for judgment on the administrative record, and, after hearing these motions, the court determined that OSDBU's determination was arbitrary, capricious, and an abuse of discretion.  *Id.* at 125.  The court found that OSDBU's reliance on Mr. Maron's legal residency as the sole determinative factor for control of KWV was arbitrary and contrary to the evidence of record.  *Id.* at 127.  VA was ordered to restore KWV to the database as an eligible VOSB concern for the remainder of its period of eligibility.  *Id.* at 128.

After the court's judgment became final, KWV filed its motion for attorneys' fees on August 2, 2013.  The government filed its response on September 3, 2013, and KWV submitted a reply on September 12, 2013.  The motion has been fully briefed and is now ready for disposition.

**STANDARDS FOR DECISION**

Congress enacted EAJA to provide qualifying parties with a mechanism to receive reasonable attorneys' fees and expenses when prevailing in litigation against the United States. *See Scarborough v. Principi*, 541 U.S. 401, 406 (2004) ("Congress enacted EAJA, Pub. L. 96-481, Tit. II, 94 Stat. 2325, in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" (quoting H.R.Rep. No. 96-1005, at 9 (1980))); *see also Commissioner, Immigration & Naturalization Serv. v. Jean*, 496 U.S. 154, 155 n.1 (1990).  A party seeking such an award must satisfy five criteria: (1) the applicant must show that it is the "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified;" (3) no "special circumstances" may exist which would render an award unjust; (4) the EAJA fee application must have been submitted to the court within thirty days of the final judgment and be supported by an itemized statement; (5) if the qualifying party is a corporation or other organization, it must have had no more than $7,000,000 in net worth or 500 employees at the time the litigation was initiated.  28 U.S.C. § 2412(d); *see also Jean*, 496 U.S. at 158; *Metropolitan Van and Storage, Inc. v. United States*, 101 Fed. Cl. 173, 185 (2011).  While KWV generally bears the burden of establishing it meets the above requirements, *Al Ghanim Combined Grp. Co. v. United States*, 67 Fed. Cl. 494, 496 (2005), the government bears the burden of proving the second criterion, that its position was substantially justified, *see White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005); *Hillensbeck v. United States*, 74 Fed. Cl. 477, 479-80 (2006).

**ANALYSIS**

The government does not challenge the first, third, or fourth of these criteria.  It is uncontested that KWV is a "prevailing party" within the meaning of the statute.  *See* Def.'s

Opp'n. Nor does the government contend that any special circumstances exist which would make an award of attorneys' fees unjust or that the EAJA application was untimely or unsupported by an itemized statement. *See id.* Rather, the government disputes the other two criteria, arguing that KWV's application failed to specify its net worth or employee count and that its position during litigation was substantially justified. *Id*. at 5-7.

A.  *Net Worth and Size*

First, the government argues that KWV's application should be rejected because KWV has not demonstrated that its net worth at the time the action was filed was less than the $7,000,000 cap or that it employed fewer than 500 employees. *See* Def.'s Opp'n at 5. The government points out that the affidavit accompanying KWV's EAJA application detailed only Mr. Maron's net worth, not KWV's net worth. *Id.* While this is true, the administrative record in this case demonstrates that KWV satisfies this requirement. *See* AR 71-85 (outlining KWV's assets and liabilities for prior years at levels far below the EAJA cap), AR 94 (detailing that KWV hired its first employee in December 2010), AR 522 (stating that KWV has one permanent employee).[2]

B.  *Substantial Justification*

To determine if the government has satisfied its burden of proving that its litigation position was "substantially justified," the court asks whether the government's position was "'justified in substance or in the main'—that is, justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also White*, 412 F.3d at 1315; *Hillensbeck*, 74 Fed. Cl. at 479; *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 512 (2003). "[S]ubstantially justified means there is a dispute over which 'reasonable minds could differ.'" *Norris v. Securities and Exchange Comm'n*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (quoting *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005)). In conducting this analysis, rather than examining the government's stance on each individual issue addressed in the case, *Gargoyles, Inc. v. United States*, 45 Fed. Cl. 139, 148 (1999), the court looks to "whether the government's overall position [both prior to and during the litigation] had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991); *see also Blakley v. United States*, 593 F.3d 1337, 1341 (Fed. Cir. 2010) ("In the context of EAJA claims, we have held that the 'position of the United States' in judicial proceedings refers to the United States' position 'throughout the dispute, including not only its litigating position but also the agency's administrative position.'" (quoting *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995))).

Furthermore, the government's position could have been substantially justified even thought it was ultimately incorrect. *Miles Constr., LLC v. United States*, __ Fed. Cl. __, __, No. 12-597C, 2013 WL 5834476, at *3 (Fed. Cl. Oct. 31, 2013) (citing *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001)). The court's inquiry is "not what the law is now, but what the [g]overnment was substantially justified in believing it to have been." *Loomis v. United States*,

---

[2] "AR __" refers to the administrative record certified by VA and filed with the court in accord with Rule 52.1(a) of the Rules of the Court of Federal Claims.

74 Fed. Cl. 350, 355 (2006) (quoting *Pierce*, 487 U.S. at 561). "Substantially justified" is not to "'be read to raise a presumption that the [g]overnment position was not substantially justified simply because it lost the case.'" *Scarborough*, 541 U.S. at 415 (quoting H.R.Rep. No. 96-1005 at 10). Instead, "substantial justification lies somewhere between winning the case and being 'merely undeserving of sanctions for frivolousness.'" *Miles Constr.*, __ Fed. Cl. at __, 2013 WL 5834476, at *3 (quoting *Pierce*, 487 U.S. at 566); *see also Norris*, 695 F.3d at 1265.

The government argues that it was substantially justified in its position throughout the dispute. Def.'s Opp'n at 5-7. In particular, the government avers that OSDBU acted reasonably when it determined that Mr. Maron did not exercise day-to-day management over KWV. *Id.* at 6. It asserts that KWV's response to the protest was "cursory" because KWV presented limited evidence of Mr. Maron's involvement. *Id.* Finally, the government argues that OSDBU was reasonable in its doubts as to the veracity of KWV's representations because KWV had left the impression during the CVE verification process that Mr. Maron resided in Rhode Island. *Id.* at 7.

The government's arguments both overstate the cause for OSDBU's investigation and avoid addressing the inquiry OSDBU conducted. While the government's initial investigation conducted by CVE was quite careful, the subsequent investigation undertaken by OSDBU was markedly superficial. In determining that Mr. Maron was not in control of the day-to-day operations of KWV, OSDBU failed actually to examine how KWV conducted its operations, omitted to interview Mr. Maron or any other employees, and did not conduct a site visit to KWV's offices in Rhode Island. *KWV*, 111 Fed. Cl. at 123. OSDBU also never considered any of the factors governing eligibility of VOSBs listed in 38 C.F.R. Part 74.4. *Id.* at 126. The court determined that OSDBU's efforts were "perfunctory" when compared to CVE's investigation. *Id.* OSDBU focused solely on Mr. Maron's *legal* residency, ignoring that Mr. Maron kept a residence in Rhode Island as well as Florida and that the time he spent in each place was almost equal. In addition, OSDBU failed to consider KWV's asseveration that Mr. Maron managed KWV while he was in Florida through telecommunications and visits to Rhode Island. *Id.* Taken as a whole, OSDBU's investigation failed to evaluate the elements of control actually exercised by Mr. Maron.

In considering Mr. Maron's legal residency to be the determinative factor for control, OSDBU cited as its only authority a decision by the Small Business Administration ("SBA") that was inapposite on its facts. *See KWV*, 111 Fed. Cl. at 127 (discussing *Matter of First Capital Interiors, Inc.*, SBA No. VET-112, at 8, 2007 WL 2438401 (2007)). The SBA's decision was miscited by OSDBU; SBA never determined that *legal* residency was the sole factor in determining control. *See id.* (analyzing *First Capital*). Instead, SBA looked at the veteran's experience level, other jobs maintained by the veteran, and the permanence and distance of the out-of-state residency. *Id.* Not only was OSDBU's reliance on the SBA decision misplaced, but OSDBU failed to consider the factors apart from residency that SBA in its decision viewed as being relevant.

Nonetheless, Mr. Maron's legal residency did raise a significant question regarding his control over the day-to-day management of KWV. First, KWV and Mr. Maron failed to ensure that Mr. Maron's legal residency was apparent to CVE's investigator. *See KWV*, 111 Fed. Cl. at 126 n.6; Def.'s Opp'n at 6-7. Second, at least for one half of each year, Mr. Maron had the task

5

of managing KWV while being physically present in Florida.  Even though OSDBU's mode of decisionmaking was markedly flawed, both as to the type of factual investigation it conducted and the legal authority upon which it relied, cause existed to address the issue of Mr. Maron's control of KWV.

This is an instance in which OSDBU's actions on individual issues were woefully inadequate, but VA's overall position had justification.  In short, the government has carried its burden to show substantial justification, albeit barely.  Because the government's position was substantially justified, KWV does not meet all the requirements of EAJA to be awarded attorneys' fees and expenses.

## CONCLUSION

For the reasons stated, KWV's motion for attorneys' fees and expenses under EAJA is DENIED.  The Clerk shall enter judgment accordingly.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Judge
